# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHEAL P. COTTON,

                              Petitioner,

v.

WARDEN SCOTT ECKSTEIN,

                              Respondent.

Case No. 18-CV-27-JPS

**ORDER**

Petitioner, Micheal P. Cotton ("Cotton"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his state conviction and sentence were imposed in violation of the Constitution. (Docket #1). The parties have fully briefed their respective positions on Cotton's asserted grounds for relief. For the reasons stated below, the Court finds that Cotton's petition is without merit and must be denied.

## 1.    STANDARD OF REVIEW

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to

review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state

court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A]

state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

## 2.    BACKGROUND[1]

In January 2011, the State of Wisconsin charged Cotton by information with four counts of first-degree sexual assault of a child in Milwaukee County Circuit Court Case No. 2011CF000071. Counts one and two alleged that between November 22, 2009 and August 30, 2010, Cotton engaged in sexual intercourse with K.J., a child who had not attained the age of 12, in violation of Wis. Stat. § 948.02(1)(b). Counts three and four alleged that between June 16, 2009 and June 15, 2010, Cotton engaged in sexual contact with S.E., a child who had not attained the age of 13, in violation of Wis. Stat. § 948.02(1)(e). According to the information, all of these acts took place at a residence on 25th Street in Milwaukee.

Cotton was tried before a jury from June 11 to June 14, 2012. S.E., K.J., and Cotton, among others, testified. S.E., who was 11 at the time of trial, testified that Cotton began sexually assaulting her when she was "about 9." (Docket #9-42 at 54). She stated that two assaults took place at her old home on Michigan Street, while a third assault took place at her new home on 25th Street. S.E. explained that Cotton was living with her family because he and her mother, C.E., were dating.

---

[1]Other than disputing the weight accorded to certain evidence by the state court, as will be discussed further herein, Cotton does not formally attempt to dispute the underlying facts pursuant to Sections 2254(d)(2) and (e)(1). *See* (Docket #11 at 4).

As to the first assault, S.E. recalled that she woke up in her bedroom to the sound of the television playing in the living room. She got out of bed and went to the living room to turn the television off, where she saw Cotton resting on the couch. Cotton called S.E. over to the couch and "told [her] to make him feel good." *Id.* at 56, 80. He then "took out his penis" from his shorts and "told [her] to rub [it]." *Id.* at 57, 80–81. When she did not, Cotton "yanked [her] hand" and "made [her] rub it." *Id.* at 57, 82. After "rub[bing] his penis up and down" for a while, Cotton then "told [her] to open [her] mouth." *Id.* at 58, 82. She went on to explain,

> Q: And what happened after Miguel told you to open your mouth?[2]
>
> A: He shoved his penis in my mouth.
>
> Q: And what did he do—what happened after he put his penis in your mouth?
>
> A: Some stuff just started squirting out.
>
> . . .
>
> Q: And what happened after this happened?
>
> A: I started vomiting all over him.
>
> Q: All over Miguel?
>
> A: Yes.
>
> Q: And what happened then?
>
> . . .
>
> A: He made me swear not to tell anybody or he was going to kill me.

*Id.* at 59, 82–83.

As to the second assault, S.E. testified that she was "half asleep, half awake" when Cotton carried her into his and her mother's bedroom. *Id.* at 61, 85. She woke up when she "realized that something was touching

---

[2]The children testified that they knew Cotton by the name "Miguel." Throughout their testimony, they referred to Cotton as "Miguel." *See, e.g.,* (Docket #9-42 at 54).

[her]." *Id.* at 61, 86. When she "opened [her] eyes," she noticed that her "clothes [were] off" and Cotton "was rubbing his penis on [her] private part." *Id.* at 61, 86–87. She went on to explain that "while he was rubbing his penis against [her] private part," some "stuff start[ed] coming out." *Id.* at 62, 88. After, Cotton "told [her] to get up," so she "put on [her] clothes" and "went to the bathroom" to "wipe[ ] it off of [her]." *Id.* at 62–63, 89.

As to the third assault, S.E. explained that she woke up and "realized that [she] was in [her] momma's bed." *Id.* at 64. She saw "that [Cotton was] naked and [she] was naked," so she "put on [her] clothes and then [she] went to the bathroom and [she] sat down and [she] cried." *Id.*

K.J., who was eight at the time of trial, testified that Cotton began sexually assaulting him when he was five. He said that all the assaults took place at the new house on 25th Street. K.J. recalled Cotton putting "his penis in [K.J.'s] butt" five times, being forced to "suck on [Cotton's] penis. . .more than three times," and experiencing Cotton "put[ting] his mouth on [K.J.'s] penis" seven times. *Id.* at 114–18. K.J. could specifically remember only some of the assaults.

For example, K.J. testified that on the day of the first assault, Cotton "call[ed] [him] into" his mother's bedroom. *Id.* at 110. After K.J. entered the bedroom, Cotton had K.J. undress and then Cotton "stuck his penis in [K.J.'s] butt." *Id.* at 111. K.J. testified that he felt "uncomfortable" and that it "hurt." *Id.* at 113. K.J. went on to explain that some "gray" stuff came out of Cotton's penis and got on "[his] butt." *Id.* After, Cotton instructed K.J. "not to tell nobody" and threatened to kill K.J. if he did. *Id.* at 113–14.

K.J. also testified that at a "different time," Cotton "put his mouth on [K.J.'s] penis." *Id.* at 114, 117. After, Cotton "made [him] suck it,"

meaning Cotton "made [K.J.] put [his] mouth on [Cotton's] penis." *Id.* at 115. The "same gray stuff" "came out of his penis" and got in "[K.J.'s] mouth." *Id.* at 116. When asked "what did you do when the gray stuff got in your mouth," K.J. replied, "I cried." *Id.*

Finally, K.J. testified to another incident where his "cousin" was present with him and Cotton. (Docket #9-43 at 23). During that encounter, Cotton made K.J. "rub [Cotton's] penis," then Cotton started "sucking on [K.J.'s] penis," then Cotton "put his penis in [his cousin's] butt," and after, Cotton "gave [K.J.'s cousin] a dollar and Kool-aid." *Id.*

Before Cotton testified, the court and the parties discussed which of Cotton's five prior convictions could be used for impeachment purposes. After considering "the lapse of time since the conviction, any rehabilitation or pardon, the gravity of the offenses, [and] the involvement of dishonesty or false statement," the court concluded that all five "should be impeachable prior convictions." (Docket #9-44 at 10–11). When Cotton testified, Cotton's attorney asked him about each prior conviction. Cotton responded that he had been convicted of five prior crimes, and he listed the nature of each crime. Cotton further volunteered that the mother of his child, a woman who was not C.E., had obtained a restraining order against him. Cotton also expressly denied committing the sexual assaults and asserted that C.E., with whom he had a "rocky" and "on and off" relationship, made up the allegations to get back at Cotton for leaving her for the other woman. *Id.* at 34–38.

The jury found Cotton guilty of all four counts charged in the information. The court sentenced him to fifty-five years of imprisonment, consisting of thirty-five years of initial confinement followed by twenty years of extended supervision. With the assistance of counsel, Cotton filed

a post-conviction motion alleging that his trial counsel was ineffective for failing to submit the State's plea offer to him. The trial court held a hearing and denied the motion. Cotton, proceeding *pro se*, then filed a supplemental post-conviction motion raising some of the matters addressed in the present petition, which the trial court denied without a hearing. Cotton appealed, and the Wisconsin Court of Appeals affirmed. Cotton filed a petition for discretionary review with the Wisconsin Supreme Court, which was denied.

**3.     ANALYSIS**

In the instant habeas petition, Cotton asserts the following grounds for relief from his conviction and sentence: (1) insufficiency of the evidence, in violation of his due-process rights, based on discrepancies between the charging document and the evidence at trial; (2) violation of Cotton's right to a speedy trial under the Sixth Amendment premised on the 18-month delay between his charging and trial; and (3) ineffective assistance of trial counsel, in violation of the Sixth Amendment, based on (a) disclosure of the nature of Cotton's prior convictions to the jury, (b) failure to object to allegedly prejudicial statements by the prosecutor during closing argument, and (c) failure to cross-examine witnesses regarding their prior statements to police concerning the alleged misconduct. (Docket #1 at 4).[3] Each claim will be addressed in turn below.

---

[3] Cotton pursued two additional ineffective-assistance theories (for a total of five) in the Wisconsin Court of Appeals, but these were rejected for failure to first raise them in the trial court. (Docket #1-1 at 9). One of the two additional theories was that counsel failed to subpoena character witnesses, and the other was that counsel failed to investigate the medical condition of a key State witness. *Id.* Cotton does not advance either claim in this proceeding. *See* (Docket #4 at 5 n.4).

### 3.1    Insufficiency of the Evidence

Cotton's first claim is that the Wisconsin Court of Appeals erred in finding the evidence sufficient to support his conviction, in violation of his right to due process secured by the Fourteenth Amendment. Specifically, he argues that there existed two fatal discrepancies between the charging document and the evidence at trial. First, on counts one and two, the information listed the time of commission as November 22, 2009 to August 20, 2010, when K.J. testified that the crimes occurred a year earlier, from November 22, 2008 to August 20, 2009. Second, for counts three and four, the information listed the location of commission as the 25th Street home, when S.E. testified that two of the assaults against her occurred at the Michigan Street home. The jury instructions followed the language of the information.

The Due Process Clause sets a high bar for overturning a conviction in habeas based on insufficiency of the evidence. Cotton's claim falls well short. As the Supreme Court explained in *Jackson*, due process guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316. "[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). The substantive elements of a criminal offense are defined by state law. *Jackson*, 443 U.S. at 324 n.16. On habeas review, federal courts defer not only to the jury's verdict but to the findings of the state court affirming the

verdict, making it exceedingly difficult for habeas petitioners to make a successful *Jackson* claim. *Coleman*, 566 U.S. at 656.

The discrepancies between the charging document and the evidence do not undermine the jury's verdict. To have found Cotton guilty of violating Wis. Stat. § 948.02(1)(b), the jury must have found beyond a reasonable doubt that (1) Cotton had sexual intercourse with K.J., and (2) K.J. was under the age of twelve at the time of the alleged sexual intercourse. Likewise, to have found Cotton guilty of violating Wis. Stat. § 948.02(1)(e), the jury must have found beyond a reasonable doubt that (1) Cotton had sexual contact with S.E., and (2) S.E. was under the age of thirteen at the time of the alleged sexual contact.

Time and location of the sexual conduct are not essential elements of these offenses. *State v. Hurley*, 861 N.W.2d 174, 186 (Wis. 2015) (date of sexual assault is not material in child sexual assault cases); *State v. Hoffman*, 316 N.W.2d 143, 152 (Wis. Ct. App. 1982) ("The exact location of the offense need not be alleged if it is not a material element of the offense."). Moreover, Wisconsin law provides that a pleading is deemed to conform to the proof at trial where, as here, no objection is raised at trial and there are only technical variances between the charging document and the trial evidence. Wis. Stat. § 971.29(2); *State v. Duda*, 210 N.W.2d 763, 767 (Wis. 1973). Contrary to Cotton's view, (Docket #13 at 2–3), a disparity between the information and the evidence concerning the date or location of his offenses did not amount to presenting a different charge or theory of liability to the jury. Such matters are simply not material to whether Cotton committed the crimes in question. Thus, his reliance on cases like *Chiarella v. United States*, 445 U.S. 222, 236 (1980), where the Supreme Court refused to consider for the first time on appeal the government's

alternative substantive theory of liability for securities fraud, is misplaced.[4]

Similarly, although the jury instructions carried over the date and location errors from the information, *see* (Docket #11-1 at 13–18), the instructions were valid because they included the two essential elements of the offenses, *State v. Dorn*, 423 N.W.2d 883, 1988 WL 48175, at *1 (Wis. Ct. App. 1988); *State v. Madsen*, 797 N.W.2d 935, 2011 WL 637785, at *2 (Wis. Ct. App. 2011). Indeed, the instructions informed the jury that proving the specific date of each offense was not necessary for the State to obtain a conviction. (Docket #11-1 at 18). Thus, even if the discrepancies amounted to error, such error was harmless. *State v. Beamon*, 830 N.W.2d 681, 693–94 (Wis. 2013). Viewing the evidence in the light most favorable to the prosecution, there was more than sufficient ground for a reasonable factfinder to conclude that Cotton sexually assaulted K.J. and S.E. twice

---

[4]In his reply, Cotton alludes to a denial of procedural due process through the State's errors in identifying the relevant dates and times of the offenses, which he says deprived him of notice of the charges against him. (Docket #13 at 5–6). Such a claim is actually rooted in the Sixth Amendment, which guarantees a criminal defendant the right to notice of the charges against him so as to permit the adequate preparation of a defense. *Kaczmarek v. Rednour*, 627 F.3d 586, 596 (7th Cir. 2010). Cotton never raised such a ground for habeas relief in the state court, nor in this Court prior to the filing of his reply. Indeed, in his opening brief in this Court he expressly disclaimed reliance on this sort of claim. (Docket #11 at 20–21). Any Sixth Amendment notice-based claim has, therefore, been both procedurally defaulted and waived. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004); *Marie O. v. Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997). It will not be considered further.

each as defined in the applicable Wisconsin statutes. That is enough to sustain the convictions. Clinging to technicalities takes Cotton nowhere.[5]

The state appellate court appropriately recognized these fatal flaws in Cotton's insufficiency-of-the-evidence claim. (Docket #9-23 at 4–5). Further, Cotton does not meaningfully challenge the sufficiency of the evidence as to his actual criminal conduct, leaving the Court no other basis on which to question the validity of his conviction.[6] This ground for relief is without merit.

### 3.2    Cotton's Right to a Speedy Trial

Cotton's next claim is that he was denied his right to a speedy trial under the Sixth Amendment. The Wisconsin Court of Appeals appropriately assessed this claim under *Barker v. Wingo*, 407 U.S. 514 (1972), which established a four-factor framework for evaluating alleged violations of a defendant's speedy-trial right. *Id.* In addressing such claims, courts review the length of the delay, the reasons for the delay, the

---

[5]In denying Cotton's supplemental post-conviction motion, the trial court noted that the verdict form did not refer to specific addresses as did the instructions. (Docket #9-19 at 7). That took care of the purported problems with S.E. (This Court could not locate the verdict forms within the records submitted by either party.) As for K.J. and the date discrepancy, the court explained that even if K.J. was a year older at the time of Cotton's assaults, that would still have made him only six years old, well under the threshold set by Wis. Stat. § 948.02(1)(b). *Id.* at 8.

[6]In his opening brief, Cotton emphasizes portions of the children's testimony which he believes show that nothing untoward happened during his interactions with them. *See* (Docket #11 at 4–5, 16–21). Yet he did not coherently argue to either the state court or this Court that their testimony about the assaults was false or unbelievable so as to support a *Jackson*-style insufficiency-of-the-evidence claim. Instead, his *Jackson* claim was limited to the discrepancies between the information and the evidence at trial. The Court cannot and will not expand the claim based on Cotton's bare conjecture that the children were lying or mistaken. Again, such piecemeal additions to Cotton's habeas petition are prohibited by the doctrine of procedural default. *Perruquet*, 390 F.3d at 514.

defendant's assertion of his speedy-trial right, and whether the defendant was prejudiced. *Id.* No one factor is dispositive. *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015). "Rather, 'they are related factors and must be considered together with such other circumstances as may be relevant.'" *Id.* (quoting *Barker*, 407 U.S. at 533). State courts thus have "significant latitude to reach reasonable decisions based on the specific circumstances of each case." *Id.* (citing *Vermont v. Brillon*, 556 U.S. 81, 91 (2009)).

The Wisconsin Court of Appeals sensibly applied the *Barker* factors to conclude that Cotton's right to a speedy trial was not violated. On the first factor, the court found in Cotton's favor, stating, "[w]e begin with a presumption that Cotton's right to a speedy trial was violated because there was an eighteen-month delay between Cotton's charging and the trial." (Docket #9-23 at 6). On the second, the court discussed the reasons for each period of pre-trial delay and ultimately concluded that the factor weighed in favor of the State:

> As for the reasons for the delay, the State and the defense jointly requested the first trial adjournment. Cotton's lawyer requested a postponement of the second trial date on the ground that he needed more time to prepare. After the third trial date was set, the State requested a three-week delay for scheduling reasons. Cotton then requested adjournment of the delayed third trial date. Most of the delays were thus attributable to Cotton. And the delays attributable to the State were reasonably made, and are thus not weighed heavily in the *Barker* analysis, especially in light of the fact that the circuit court was informed on several occasions that there was no speedy trial request pending because Cotton was serving time on another charge.

*Id.* (internal citations omitted). As to the third factor, the state court noted that although Cotton contended that he had filed a *pro se* speedy trial

request, "Cotton did not make a speedy trial request through counsel." *Id.* at 6–7. Finally, in analyzing the last factor, the court concluded that Cotton was not prejudiced because he was already serving time on another offense and his defense was not impacted by the delay:

> As for prejudice to Cotton from the delay, it "should be assessed in the light of the interests of defendant which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The right to a speedy trial was designed: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize the anxiety and concern of the accused"; and (3) "to limit the possibility the defense will be impaired." *Id.* Here, Cotton was serving time on another case during the pretrial period, so he cannot claim that the circuit court's failure to more promptly conduct the trial subjected him to unwarranted pretrial incarceration. While Cotton may have experienced anxiety waiting for his trial, he does not assert that *his defense* to these charges was impaired, although he contends that he suffered other inconveniences. On the whole, the lack of prejudice to Cotton weighs strongly in favor of a conclusion that his right to a speedy trial was not violated.

*Id.* at 7. The state court thus concluded that although the delay was presumptively unreasonable and caused Cotton some anxiety, those factors were outweighed by "the fact that most of the delay was attributable to Cotton, his ability to defend himself was not impaired, and he would have remained incarcerated in any event." *Id.*

This analysis and the resulting conclusion were reasonable under *Barker* and the facts of Cotton's case. Cotton does not identify anything about the state court's decision that was contrary to or involved an unreasonable application of *Barker*. Rather, he simply disagrees with the Wisconsin Court of Appeals' weighing of the various factors as well as its ultimate decision. Disagreement alone is not a ground for habeas relief,

since federal courts pay a great deal of deference to state court decisions reasonably rendered upon the facts and the relevant law. *O'Quinn*, 806 F.3d at 977.

For instance, Cotton believes that the state court should have cast more blame on the State for the pre-trial delays, including the continuance it requested to contemplate adding child-pornography charges and its alleged dilatoriness in producing discovery that necessitated a continuance requested by the defense. (Docket #11 at 23–24); (Docket #13 at 7–8). But the Wisconsin appellate court was not obligated to address each and every fact raised by the parties pertinent to the *Barker* analysis. Cotton detailed these grievances in his briefs to the state court. The Wisconsin Court of Appeals was permitted to focus its written analysis on the most critical considerations and those which animated its final conclusion. *See Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007) (state court cannot ignore or overlook a key piece of evidence in reaching its conclusion). Moreover, even if one credited Cotton's claim that more of the delay in his case was attributable to the State than him, at worst those delays were occasioned by mere negligence on the part of the State or overcrowding in the trial court, reasons that *Barker* itself recognized should not be weighed heavily against the State. *Barker*, 407 U.S. at 531. Cotton offers no more than speculation that the State was in reality motivated by a nefarious desire to hamper his defense.

Further, assuming the state court was incorrect in its apportionment of blame for the pre-trial delays, Cotton says precious little about the other factors the court found important, such as the lack of prejudice to him based on his incarceration in connection with another case and his inability to explain why the delays disadvantaged his

defense. (Docket #11 at 27–31). On the prejudice question, although he complains that the victims' memories were faulty at trial, Cotton ignores other reasonable explanations for this problem, including the delay between the offenses and the bringing of charges, as well as the tender age of the victims. Likewise, on the third *Barker* factor, assuming the state court should have given Cotton credit for his *pro se* assertions of his speedy trial right, *see* (Docket #11 at 25–26); *O'Quinn*, 806 F.3d at 978, the Court does not see this oversight as having constitutional significance. Certainly, changing the weight of that factor does not fatally undermine the Wisconsin Court of Appeals' analysis, whether considered alone or collectively with the other asserted errors.

In the end, the question is not whether this Court would decide the matter differently in the first instance. What matters is that this Court cannot say the state court's conclusion was an unreasonable application of *Barker*. That is the beginning and end of habeas review. *O'Quinn*, 806 F.3d at 977. As such, Cotton's second ground for relief must be rejected.

### 3.3 Ineffective Assistance of Counsel

Cotton's final claim is that his counsel was constitutionally ineffective. As the state court recognized, claims of ineffective assistance of counsel under the Sixth Amendment are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on his ineffective assistance claim, *Strickland* requires that Cotton prove his counsel's performance was deficient and prejudicial. *Id.* at 687–88, 694. Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 687–88. A petitioner must overcome a strong presumption that trial counsel performed adequately. *See Bieghler v. McBride*, 389 F.3d 701, 707–08 (7th Cir. 2004). To prove prejudice, Cotton must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland*'s high bar is never an easy task." *Richter*, 562 U.S. at 105 (quotation omitted). Applied *de novo*, *Strickland* is deferential to counsel. *Id.* Establishing that a state court's application of *Strickland* was unreasonable in a federal habeas proceeding is doubly difficult. *Knowles*, 556 U.S. at 123. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

As noted above, Cotton raises three assertions of constitutionally deficient representation at trial. First, his lawyer disclosed the nature of each of Cotton's prior convictions to the jury. Second, counsel did not object to allegedly prejudicial statements by the prosecutor during closing argument regarding his relationships with C.E. and the mother of his child. Third, counsel failed to cross-examine witnesses regarding their prior statements to police concerning the alleged misconduct. As will be explained below, the first two grounds are without merit, and the third is irretrievably procedurally defaulted.

The Wisconsin Court of Appeals reasonably rejected the first two of Cotton's three ineffective-assistance claims on their merits. The court's decision reads, in relevant part:

> Cotton contends that trial counsel provided him with constitutionally ineffective assistance when he questioned Cotton in front of the jury about the specifics of his prior convictions. We reject this argument. Cotton was forced to

admit that he had five prior convictions because he decided to testify at trial. The circuit court explained that trial counsel's questions were part of a deliberate defense strategy:

> It was clear to the court that trial counsel did this to show the jury that the defendant had never been convicted of a sexual assault of any kind previously. It was. . .clearly a point of strategy. . . . The defendant's five prior convictions may have [otherwise] caused the jury to believe that he had engaged in similar behavior with children in the past.

A claim of ineffective assistance of counsel will not lie where counsel engages in conduct based on reasonable strategy. *See Strickland*, 466 U.S. at 697.

Cotton next argues that trial counsel provided him with constitutionally ineffective assistance because he did not object to the prosecutor's statements during closing argument about his involvement with two women at the same time:

> And what sort of personality would sexual[ly] assault a child? Someone who cares only about his own pleasure. That's the only sort of person who would commit this sort of heinous, horrible act. That's the only person who could. Someone who freely tramples on the feelings of others, someone who's trying to use both women for—two women for his own sexual pleasure.

Cotton characterizes this as "other acts" evidence. *See* Wis. Stat. § 904.04(2) (2015-16). We reject this argument. The jury was informed that the remarks of the attorneys are not evidence: "Consider carefully the closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence." Moreover, the prosecutor's comments had an evidentiary basis in Cotton's testimony that he was dating the victims' mother and another woman at the same time. Counsel did not perform deficiently in failing to object

to the prosecutor's closing argument on the ground that it was other acts evidence because an objection on that ground would not have been successful. *See State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (trial counsel was not ineffective for failing to raise a meritless claim).

(Docket #9-23 at 2–3) (footnote omitted).

These conclusions were not unreasonable under *Strickland*. First, it is well settled that a habeas petitioner may not second guess the reasonable strategic decisions his counsel made during trial. Cotton does not challenge the trial court's finding that, as a matter of fact, his testimony regarding his prior convictions was a strategic choice employed to remove the specter of prior similar sexual misconduct from the jurors' minds. (Docket #11 at 33–36). Certainly, counsel was not required to go into the nature of each conviction and could have prevented the State from doing so. *See* (Docket #13 at 11–12). And perhaps Cotton is correct that the strategy backfired, as credibility was crucial to the trial and his prior conviction for theft may have painted him as an untruthful person before the jury. Similarly, his prior weapons convictions may have cohered in some sense with K.J.'s testimony that a gun was present in the home during the assaults.

But counsel chose his path for a calculated, tactical reason. He concluded it was more important to explain that Cotton was not a repeat sexual deviant and assume the risk that other negative inferences might flow from Cotton's prior convictions. Consequently, Cotton cannot now say that his counsel was constitutionally ineffective for pursuing this strategy, even though it was not successful. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice."); *Bryant v.*

*Brown*, 873 F.3d 988, 997 (7th Cir. 2017) (even if hindsight shows a line of questioning was mistaken, it cannot support habeas relief if it resulted from a reasonable strategic choice). Where, as here, counsel made a strategic choice "after thorough investigation of law and facts relevant to plausible options," his ultimate decision is "virtually unchallengeable." *Strickland*, 466 U.S. at 690–91.[7]

Second, the Wisconsin Court of Appeals reasonably rejected Cotton's ill-conceived other-acts objection. The objection Cotton wanted his counsel to make would never have succeeded, as the prosecutor's statement was not itself evidence and it found support in Cotton's own trial testimony. The jury was instructed not to take counsel's argument as evidence. *See* (Docket #11-1 at 19). Counsel are afforded wide latitude in closing argument to draw inferences from the evidence, and nothing in the record suggests that the prosecutor strayed from permissible ground during closing argument. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997). Cotton's case is quite unlike *State v. Tortenson*, 524 N.W.2d 648, 1994 WL 479613, at *1 (Wis. Ct. App. 1994), which he cites in his reply, as there the prosecutor told the jury, "If the defendant did one perverted thing, can that lead you to believe he did another?" The prosecutor in Cotton's case said nothing approaching this blatant violation of the rules of evidence. Because Cotton's sought-after objection would not have been sustained, his lawyer

---

[7]Cotton says he should have been given an evidentiary hearing in state court to explore counsel's reasons for this maneuver, (Docket #13 at 10), but this is not so, as he did not challenge the record made in the trial court that his counsel's choice was a strategic one made for the reasons detailed above, *see State v. Howard*, 630 N.W.2d 244, 253 (Wis. Ct. App. 2001) (*Machner* hearing required to determine "whether [counsel's] failure to object was based on strategy").

was not ineffective for failing to lodge it. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

Moreover, for both of these ineffective-assistance claims, it must be remembered that the Court's review is confined to "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Applying this extraordinarily deferential standard, this Court finds that the Wisconsin Court of Appeals did not err.

Finally, as to Cotton's third claim of ineffective assistance, it is procedurally defaulted in this Court because the Wisconsin court reasonably found that it had been forfeited. *Id.* at 3. The court reasoned:

> Cotton next argues that trial counsel provided him with constitutionally ineffective assistance when he allegedly: (1) failed to impeach key State witnesses with statements given to the police closer in time to the alleged assaults; (2) failed to interview or subpoena witnesses who would have corroborated Cotton's testimony and/or attested to his good character; and (3) failed to investigate the medical condition of a key state witness and procure her medical records for trial. Where, as here, claims of ineffective assistance of counsel are not first raised in the circuit court, we will not consider them. *State v. Cuban*, 210 Wis. 2d 597, 604–05, 563 N.W.2d 501 (1997) ("By limiting the scope of appellate review to those issues that were first raised before the circuit court, this court gives deference to the factual expertise of the trier of fact, encourages litigation of all issues at one time, simplifies the appellate task, and discourages a flood of appeals.").

*Id.* The appellate court further explained in a footnote that

> After the circuit court denied Cotton's first postconviction motion, which was filed by appointed counsel, Cotton

> decided to proceed *pro se* and brought a second postconviction motion, in which he raised the two claims of ineffective assistance of counsel we have addressed. Cotton was amply warned that as a *pro se* litigant he was required to follow this court's rules. Cotton's *pro se* status does not excuse his failure to first raise these three claims of ineffective assistance of trial counsel in the circuit court.

*Id.* at 3 n.2.

Procedural default arises when the habeas petitioner has not raised his federal habeas claims in the correct way during his state proceedings. A claim is procedurally defaulted when (1) the claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Perruquet*, 390 F.3d at 514; *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Here, Cotton did not present the cross-examination portion of his ineffective-assistance claim to the Wisconsin trial court before raising it in the Court of Appeals. As such, he violated one of Wisconsin's own longstanding procedural rules enunciated in *State v. Caban*, 563 N.W.2d 501, 505 (Wis. 1997), which holds that "even [a] claim of a constitutional right will be deemed waived unless timely raised in the circuit court." This was an adequate and independent state law ground for the disposition of the claim. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) ("A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied."); *Gillis v. Grams*, No. 08-CV-117-BBC, 2008 WL 2512915, at *6 (W.D. Wis. June 20, 2008) (finding that the Wisconsin Court of Appeals' refusal to hear a claim based on *Caban* gave rise to procedural default);

*Turner v. Pollard*, No. 13–CV–731–JPS, 2014 WL 5514169, at *7 (E.D. Wis. Oct. 31, 2014) (same).

A federal court cannot reach the merits of a procedurally defaulted claim unless the petitioner demonstrates (1) cause for the default and actual prejudice from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F.3d 1205, 1211–12 (7th Cir. 1996). To meet the "cause" requirement, there must have been some external impediment that prevented the petitioner from raising the claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show a miscarriage of justice, the petitioner "must demonstrate that he is actually innocent of the crime for which he was convicted." *Perruquet*, 390 F.3d at 515.

Cotton offers two arguments as to why his procedural default should be excused, but neither has merit. First, he blames his appellate counsel for failing to raise the cross-examination portion of his ineffective-assistance claim. (Docket #11 at 40–41). This position ignores the fact that the trial court allowed Cotton to file a supplemental post-conviction motion after his appellate counsel was dismissed. Cotton cannot blame appellate counsel for failing to raise the claim when he was given a full and fair opportunity to do so. He suggests his oversight should be forgiven in light of his *pro se* status, (Docket #13 at 16), but his lack of legal training was not an external impediment to his ability to raise the claim, *Smith*, 598 F.3d at 385.

Second, Cotton claims that brief-size restrictions in the state court limited the arguments he could raise. (Docket #11 at 41). He cites no authority providing that something as banal as brief-size restrictions is sufficient cause for a procedural default. And in any event, Cotton filed an

oversized post-conviction motion, (Docket #9-18), so he cannot complain that the normal briefing restrictions limited his ability to raise every aspect of his ineffective-assistance claim he wanted to assert.

The Court will not excuse Cotton's procedural default as to the cross-examination portion of his ineffective-assistance claim. It, like the rest of Cotton's claims, will be dismissed.

**4.      CONCLUSION**

For the reasons stated above, the Court finds that Cotton's asserted grounds for relief are without merit. The petition must, therefore, be denied.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Cotton must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court's discussion above makes clear, no reasonable jurists could debate whether Cotton's petition has merit. As a consequence, the Court is compelled to deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's motion to submit an oversized brief (Docket #10) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2018.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge